57 N.J. Super. 393 (1959)
154 A.2d 836
WALTER NAZZARO, AS EXECUTOR OF THE ESTATE OF CHRISTINA NAZZARO, DECEASED, AND WALTER NAZZARO, AS EXECUTOR OF THE ESTATE OF CHARLES NAZZARO, DECEASED, PLAINTIFF-APPELLANT,
v.
ARTHUR NAZZARO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1959.
Decided October 19, 1959.
*394 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Manuel Korn argued the cause for appellant.
Mr. Nicholas Rapuano argued the cause for respondent (Mr. Peter Cammelieri, attorney; Mr. Joseph L. Conn on the brief).
PER CURIAM.
Plaintiff appeals from a judgment in favor of defendant entered in the Law Division.
Plaintiff's complaint is in two counts. The first seeks a sum allegedly due the estate of defendant's mother, Christina Nazzaro, who died testate in April 1952. The second seeks a sum allegedly due the estate of defendant's father, Charles Nazzaro, who died August 29, 1952.
The mother's will left her entire estate, except two parcels of real estate, to the father. Thereafter, on May 21, 1952, the father gave the defendant the following writing:
"Dear Arthur:
This is to confirm understanding had with you this date that any and all sums of money which you may owe me at the time of my death can be repaid to my estate in such payments as you desire over a period of twenty years, without any interest on any unpaid balance.
 Very truly yours,
 Charles Nazzaro.
 W.N.
"W.N." are the handwritten initials of the plaintiff.
*395 In the pretrial order defendant admitted "that he borrowed certain sums of money from his father, Charles Nazzaro, and his mother, Christina Nazzaro" but he denied that they were as large as claimed by plaintiff. In addition, defendant asserted that whatever the true indebtedness might be, the writing of May 21 quoted above gave him 20 years to pay it.
In reply, plaintiff asserted in the pretrial order that "there was no consideration for the alleged agreement executed on May 21, 1952 * * *." In his brief in this appeal plaintiff urges also that "the letter dated May 21, 1952 should be construed to refer only to money owed by Arthur Nazzaro to Charles Nazzaro and not to money owed by Arthur Nazzaro to the Estate of Christina Nazzaro," and that "Charles Nazzaro, as residuary legatee of the Estate of Christina Nazzaro, did not have the power to grant an extension of time to Arthur Nazzaro for the payment of debts due the Estate [of Christina] without the consent of the executor." The latter two arguments may be beyond the issues raised by the factual contentions set forth in the pretrial order, but since they appear to have been asserted at the trial without objection we will pass upon them.
Although plaintiff had witnessed the writing of May 21 and appeared to know a good deal about the matter, plaintiff elected to avail himself of the "Dead Man's Act," N.J.S. 2A:81-2, and did not testify. To prove the amount allegedly due from defendant to each estate plaintiff relied entirely on two affidavits which defendant had signed at plaintiff's request for submission as part of the inheritance tax returns of the respective estates.
Plaintiff introduced the two affidavits in evidence in full. The one which was filed with the inheritance tax return of the father's estate was dated August 25, 1953 and said:
"I am 42 years of age and I have a wife and five children. * * *
At the time of my father's death I owed him $56,461.13. He had no writing or other security from me for that debt. At this time I still owe my father's estate the same amount, having paid nothing *396 on account thereof, and the reason therefor is that I am entirely without funds.
In October 1951 I formed the Richport Finishing Corporation under the laws of Puerto Rico and established a factory there. I invested all the money and assets I had, of every kind and nature, in that corporation, with the exception of an interest I had in a chattel mortgage made by The Vinmar Corporation to the Applikon Textile Dyers & Printers, Inc.
About August 1, 1952 I owed my brother Walter Nazzaro $30,000.00 and my father $159,021.97. This was money I had borrowed from them in various amounts over a period of about five years previous.
I had invested all my other money and assets in the Richport Finishing Corporation and I was being pressed for payment by my father and my brother. To satisfy them and to prevent them from pressing me I assigned to them my interest in the aforesaid mortgage. * * * $30,000.00 of this mortgage was in full payment of what I owed my brother and the remainder of the unpaid balance of the mortgage, $102,458.38, went towards the payment of what I owed my father so that I then still owed my father the sum of $56,461.13 [sic].
When I transferred the aforesaid mortgage I had no other money or property except my investment in the Richport Finishing Corporation. In consideration of my assigning the aforesaid mortgage to my father and brother my father gave me a writing reading as follows: [then followed the writing dated May 21 quoted above]
The business of the Richport Finishing Corporation was not a success and the plant was closed down on February 13, 1953. On March 1, 1953 a petition in bankruptcy was filed against the company and these bankruptcy proceedings are still pending. I still have no assets or funds other than that which I had invested in the Richport Finishing Corporation. * * *."
Plaintiff also introduced in evidence the assignment of mortgage mentioned in the affidavit. It was dated August 15, 1952.
Plaintiff's first ground of appeal is that "the finding by the trial court that there was sufficient consideration for Charles Nazzaro's agreement to grant Arthur Nazzaro an extension of time to discharge his indebtedness was against the weight of the evidence." Admittedly the only proof that the assignment was the consideration for the extension is the statement in the affidavit. Plaintiff does not challenge the competence of that evidence. 7 Wigmore on Evidence (3d ed.), § 2117, p. 534. What plaintiff contends is that *397 the trial court should have rejected that statement in the affidavit as a mere conclusion, overthrown by the remaining statements in the two affidavits, and the testimony adduced at the trial; that after reading everything contained in both affidavits in the light of the date of the assignment and the testimony as to who drafted the affidavits and how and why, the trial court should have found that the assignment was not given in consideration for the extension, and that indeed the extension was without consideration.
We find that the trial court was justified in finding as it did, especially since plaintiff (who had received $30,000 as a result of the assignment) elected not to testify. Cf., Know the Facts, Inc. v. Ryan, 48 N.J. Super. 453 (Ch. Div. 1958); 2 Wigmore on Evidence (3d ed.), § 578. As we have said, the affidavits were signed by defendant at the request of the plaintiff for filing with the inheritance tax returns. They were prepared by the attorney for the estates and were obviously for the purpose of minimizing taxes. They were signed in 1953, three years before the institution of this action. When defendant signed them he believed that plaintiff recognized the validity and the scope of the extension. So construed, we find nothing in the affidavits which negatives the statement therein contained that the assignment was the consideration for the extension. The fact that the assignment was delivered after the extension agreement is of no importance if the delivery was pursuant to an agreement entered into on or before May 21 that the assignment was to be the consideration for the extension.
In support of the argument that the letter dated May 21, 1952 "should be construed to refer only to money owed by Arthur Nazzaro to Charles Nazzaro and not to money owed by Arthur Nazzaro to the Estate of Christina Nazzaro," plaintiff again relies almost entirely upon the language of the affidavits; and again construed as above we find nothing in those affidavits or in the surrounding circumstances that leads us to a conclusion contrary to that reached by the trial court. It seems to us that the May 21 *398 letter clearly included the debt due the mother's estate, for the father then doubtless considered himself the owner of it. Furthermore the language was prospective and all inclusive  "any and all sums of money which you may owe me at the time of my death." Finally, it is not reasonable to assume that the father would give his impecunious son 20 years to pay the large sum owed him and at the same time leave him vulnerable to an action for the approximately $35,000 owed the mother at the time of her death. Plaintiff points to the fact that defendant's affidavit filed with the inheritance tax return of the mother's estate made no mention of the extension agreement, as proof that defendant understood that the extension agreement did not include the debt due the mother. We do not so regard it. The inheritance tax return of the mother's estate of which the affidavit was to be a part necessarily spoke as of the time of her death. At that time there was no extension agreement and therefore reference to it in that affidavit would have been inappropriate. On the other hand, when the extension agreement was signed the debt was due the father, and therefore the affidavit relating to his inheritance tax return properly advanced it as a reason for discounting the value of the debt.
We find no merit in appellant's argument that the father did not have the power to include the money due the mother's estate in the extension agreement without the consent of plaintiff as executor. It is stipulated that the mother's estate has been at all times solvent and that the amount due her at the time of her death was never needed to pay debts or administration expenses. Under those circumstances the father had the power to grant the extension of time. Restatement Trusts 2d, §§ 328 and 132; cf., § 83.
Affirmed.