58 N.J. Super. 287 (1959)
156 A.2d 153
FLUORO ELECTRIC CORPORATION, PLAINTIFF-APPELLANT,
v.
SMITH TRANSPORT LIMITED, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1959.
Decided December 2, 1959.
*289 Before Judges GOLDMANN, CONFORD and HANEMAN.
Mr. Arthur Slavitt argued the cause for plaintiff-appellant.
Mr. Jerome S. Lieb argued the cause for defendant-respondent (Messrs. Harkavy and Lieb, attorneys).
*290 The opinion of the court was delivered by CONFORD, J.A.D.
The first count of the complaint in this action (the appeal is not concerned with the second count) recites that defendant, a common carrier, received from plaintiff on July 15, 1957 five reels of telephone cable for shipment to Barrington Air Force Base, Barrington, Nova Scotia; that the defendant received the goods in good condition; but that "when said merchandise arrived at its destination, the merchandise had been damaged in transit." Damages were sought in the sum of $1,585.35 plus interest.
An understanding of our disposition of this matter requires setting forth the more significant paragraphs of the pretrial order substantially in full, verbatim. They read:
"1. Breach of contract action.
2. On July 15, 1957 pltf an electrical contractor hired the deft a common carrier engaged in interstate commerce licensed by ICC to deliver five reels of lead covered telephone cables to Barrington Air Force base at Barrington Nova Scotia in the same condition the reels were received by pltf alleges shipment was received by deft in good order but on reaching its destination the articles were damaged to extent of $1585.35.
3. Deft admits making the contract of shipment admits the receipt of the five reels in good condition; denies that the damage, if any occurred subsequent to its delivery of the five reels to Barrington Air Force base. More specifically denies they were in fact damages (sic) while in transit.

* * * * * * * *
6. Complaint and answer are deemed to state a cause of action of breach of contract. * * *
7. Sole issue involved is whether or not the goods in question whether they were received in the same condition as they were when shipped or in accordance with the wording of the contract, i.e. bill of lading."
The case was tried in the Law Division by a judge sitting without a jury. At the trial plaintiff proved the agreement for shipment of the reels in question from Newark, New Jersey to the Air Force base mentioned. This was very heavy merchandise, weighing 11,365 pounds in total. The bill of lading issued by defendant was introduced in evidence. The designated consignee was "Fluoro Electric *291 Corp." (plaintiff). Opposite the printed legend, "Mail or street address of consignee  For purposes of notification only," appears the designation, "Barrington Air Force Base." The "Destination" is stated as "Barrington, Nova Scotia." There was one intermediate carrier, and the terminal carrier was Thompson Express. The testimony in the case indicates, without substantial dispute, that when the Thompson truck reached the Air Force base gates, the drivers found no representative of the consignee present. They were directed by the Air Force personnel to drive to a gravel-paved parking lot. The drivers having received instructions from their employer not to unload, the Air Force people unloaded by simply rolling the cables off the truck onto the ground, a drop of several feet. It is unquestionable, as undertaken to be proved by the plaintiff and found as a fact by the trial judge, that the damage to the cables and the reels for which this action was brought was sustained as a result of the dropping of the loaded reels to the ground.
Plaintiff's own direct proofs, so far as is discernible from the appendix to its brief, consisted substantially of proof of the agreement, the delivery to the carrier, and the damage to the merchandise. The precise theory for imputing liability to defendant was not expressed by plaintiff during submission of its direct case. On this appeal its primary position is that there was a duty on the part of the carrier to deliver the goods into the dominion of the consignee or its agent, and no one else, failing which, as here, there is absolute liability for damage to the goods occurring before such delivery. Secondarily, it is contended that defendant was responsible for the negligence of the terminating carrier  constituted by the employees of the latter letting the loaded reels be dropped to the ground in a manner they knew was improper and likely to result in damage.
The proofs submitted by the defendant were mainly designed to establish that this shipment, under Interstate *292 Commerce Commission regulations and controlling tariffs, did not call for the unloading of the merchandise by the carrier in the absence of a special charge therefor.
In the course of its cross-examination of one of the defense witnesses plaintiff made it plain that one of the grounds for its claim was misdelivery of the goods to the Air Force personnel. This was also argued by its counsel in summation. Although no stenographic notes were made of the argument on summation, counsel so represented to this court, and the nature of the trial judge's oral opinion disposing of the matter adversely to plaintiff leaves no question as to this. The court said, in part:
"* * * The driver said that he had instructions from his employer that he was not to unload these goods and he was therefore faced with a very practical problem.
It is true, as Mr. Slavitt said, he could have left his truck there, but I think that would have been a rather hazardous thing to do under the circumstances. He could have returned also, Mr. Slavitt has suggested, but I think that might well have been an impractical thing to do because he would have had to go back the 250 miles which presumably took him at least a day or two driving a heavy load like that, and so he inquired at the Air Station and was advised that the Air Force personnel would unload the truck and store the merchandise until someone arrived from Fluoro Electric.
* * *
Now, the question is whether or not Smith Transport can be held responsible for that. I frankly do not see how they can. I do not think that it is up to the Smith Transport to show that they were not required to unload this truck. I think it was incumbent upon the plaintiff in this case to show that was a part of the contractual relationship established with Smith Transportation. The transportation agreement provided for unloading the merchandise at the place of destination.
Not only has the plaintiff not proved that, but the proof appears to be quite the contrary, that the rates charged and the tariff regulations that apply to this particular situation excluded unloading of merchandise at the point of destination * * *."
The legal principles controlling the responsibility and liability of a common carrier in respect to delivery of goods are well established. Under controlling federal legislation, delivery of an interstate shipment under a straight *293 bill of lading may be made only to the person lawfully entitled to possession of the goods or the named consignee, Bills of Lading Act, 49 U.S.C.A. § 81 et seq., 89(a, b), and the carrier is absolutely liable for damages resulting from improper delivery. Bills of Lading Act, 49 U.S.C.A. § 90; North Pennsylvania Railroad Company v. Commercial Nat. Bank of Chicago, 123 U.S. 727, 738, 8 S.Ct. 266, 31 L.Ed. 287 (1887); Estherville Produce Co. v. Chicago, R.I. & P.R. Co., 57 F.2d 50 (8 Cir. 1932); Rountree v. Lydick-Barmann Co., 150 S.W.2d 173 (Tex. Ct. Civ. App. 1941). These cases hold that where the consignee or his agent cannot be found at the destination after reasonable inquiry, it is the duty of the carrier to have the goods stored on account of and at the expense of the owner. He may not relieve himself of liability by leaving them with any other person. Furthermore, even though the improper delivery was made by the terminal carrier, the initial carrier may be held liable therefor. 49 U.S.C.A. § 20, par. 11, applicable to motor vehicles under 49 U.S.C.A. § 319. Georgia, F. & A. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916); Galveston, H. & S.A.R. Co. v. Wallace, 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516 (1912).
Defendant contends that the consignee named in the bill of lading is either plaintiff or the Air Force base in the alternative, or plaintiff in care of the Air Force base. We do not agree. The bill of lading unequivocally indicates Fluoro Electric Corp. to be the consignee. As noted above, Barrington Air Force Base is designated only as the address of consignee. Therefore, for the carrier to have left the goods with one other than the consignee, unless an authorized agent of the latter, was clearly improper despite the convenience to the carrier in so doing. See Rountree, supra. Distinguish the case where there is a custom to consider delivery complete when the goods are merely brought to the destination and left there unloaded. See, e.g., Rice & Lockwood Lumber Co. v. Boston & M.R.R., 308 Mass. 101, *294 31 N.E.2d 219 (Sup. Jud. Ct. 1941); cf. Standard Combed Thread Co. v. Pennsylvania R. Co., 88 N.J.L. 257 (E. & A. 1915). No such custom was shown here as between carrier and shipper.
From the foregoing it seems clear that the reasoning and decision of the trial court to the effect that the carrier was not responsible merely because the rate charged did not include an obligation to unload is not well founded in the statutes and decisions here applicable.
If there were no other pertinent considerations therefor, we would reverse and remand solely for the assessment of plaintiff's damages. Defendant contends, however, that the pleadings and pretrial order do not raise the theory of liability for misdelivery and that the judgment therefore cannot be impugned on the basis of its incorrectness on that ground of liability on appeal. The pretrial order is, of course, ordinarily controlling as to the contentions and issues available for submission at trial. Lertch v. McLean, 18 N.J. 68 (1955). However, "[w]hen issues not raised by the pleadings and pretrial order are tried by consent or without the objection of the parties," they are to be treated as though properly so raised. R.R. 4:15-2. The courts are enjoined by that rule to be liberal in granting amendments of the pleadings and pretrial order, even at trial, where necessary to subserve the presentation of the merits of the action, provided the adverse party will not be prejudiced thereby. To sustain a judgment on issues not raised by the pleadings and pretrial order the court must be satisfied that such issues were recognized by the parties and actually tried. Sattelberger v. Telep, 14 N.J. 353, 363 (1954); Binder v. Green, 8 N.J. Super. 88 (App. Div. 1950); Barber v. Hohl, 40 N.J. Super. 526 (App. Div. 1956); Grammas v. Colasurdo, 48 N.J. Super. 543 (App. Div. 1958); Nazzaro v. Nazzaro, 57 N.J. Super. 393 (App. Div. 1959).
Insofar as paragraph 2 of the order in this case is construable as a contention that the goods were damaged *295 before they arrived at the Air Force base, the plaintiff's proof-pattern very early in the trial demonstrated a change in that position to the obvious notice of defendant and the trial court. At a point in the trial when the court and counsel were using the term "delivery" in its lay sense as meaning delivery to the air base site, the court stated that plaintiff would "have to show somewhere along the line that when these reels of cable were delivered by the trucking company that they were in a damaged condition and what the damage was at that time." But in the same colloquy counsel for plaintiff clearly stated his position that "at the time it [the goods] was delivered it was not damaged." The entire purport of the testimony of plaintiff's witness, Michaud, was that the damage occurred when the reels were dropped from the truck.
Paragraph 7 of the pretrial order, purporting to state "the sole issue," is ambiguous in its reference to the time when the goods were "received." It might have been intended to mean when received by the consignee. While this paragraph is ambiguous, it is at last suggestive of the idea that one of the issues is whether the condition of the goods as finally delivered to the consignee itself was in accordance with the requirements of the bill of lading. A clear recognition by adverse counsel and the court that plaintiff was contending (among other things) that there had not been a legal delivery of the goods to the consignee in accordance with the requirements of the bill of lading prior to the occurrence of the damage is indicated by the following extract from the record during the cross-examination of a representative of the defendant. The latter had testified that the tariff approved by the Interstate Commerce Commission applicable to this shipment and bill of lading did not include payment for the service of unloading the cargo:
"Q. When you are a public carrier you accept things for delivery, don't you? A. Right.
Q. Do you know whether any tender was made or any notice was given to Fluoro that the merchandise had arrived?
*296 Mr. Harkavy: I object.
The Court: It is an argumentative question. The driver said when he got there he asked if anybody was there and he was told nobody was there.
What do you mean, got in touch with Newark?
Mr. Slavitt: With Newark, yes.
The Court: Objection sustained to that.
Q. How long have you been with Smith Transportation? A. Thirteen years.
Q. And are you in charge of any of the deliveries? What is your position? A. Director of claims.
Q. Director of claims only? A. Yes.
Q. You don't know the practice of the company when they make deliveries, do you? A. Sure.
Q. What do they consider delivery?
Mr. Harkavy: Well, now, I object. You have a bill of lading. It was a contract. What their practice is is outside the scope of the contract.
The Court: I don't think what they consider to be delivery is the question. I think what is considered delivery under it is a more proper question. what constitutes delivery under the ICC.
Q. What constitutes delivery under the ICC?
Mr. Harkavy: I object. The regulations speak for themselves.
The Court: I will allow it since I suggested the question.
A. It is in there. You can read it.
Q. This has to do with the rate. It does not call for delivery, does it? A. I would have to read that. Here is rule 21, section 1, where an article or articles in a single container or shipping form tendered weighs 500 pounds or more, or if the greatest dimension exceeds 8 feet, or greater than intermediate dimension to exceed 4 feet, loading or unloading shall be performed by the shipper or consignee as the case may be. If requested, carrier will undertake on behalf of the shipper or consignee as the case may be to employ additional help, no charges made for labor performed by the truck driver." (Emphasis added.)
And, as we have seen, plaintiff's counsel apparently argued in summation, but failed to persuade the trial court, that defendant made improper delivery at the air base and was therefore responsible for the ensuing damage.
Defendant urged at the argument before us that had it apprehended that the plaintiff was purporting to try the issue of misdelivery it would have offered evidence of agency of the air base personnel to receive delivery for the consignee. Although our finding above is that the issue of misdelivery *297 was recognized and actually tried, nevertheless, in view of the late point in the trial at which the issue clearly emerged, the ambiguity of paragraphs 2 and 7 of the pretrial order, and the possibility of prejudice to defendant in its trial of the case, the interests of justice appear to us to call for a retrial of this case in its entirety. There should, of course, be a new pretrial order.
Reversed and remanded for a new trial.
HANEMAN, J.A.D. (dissenting).
I do not agree in full with the result attained by my colleagues nor with their reasoning.
The facts are generally as set forth in the majority opinion. However, there are further facts which influence my conclusion.
The trial judge concluded in his opinion that: (1) the equipment was not damaged prior to the arrival of the truck at Barrington Air Force Base, but rather, when it was unloaded, and (2) under the terms of the agreement, defendant was not obliged to unload the truck and was therefore not responsible for the resulting damage.
Plaintiff argues that: (1) the shipment was not delivered in accordance with defendant's undertaking as a common carrier and therefore it was liable because of the misdelivery, even without a showing of negligence, and (2) the facts adduced at the trial were sufficient to prove negligence on the part of the ultimate carrier.
Plaintiff's main point is directed at the misdelivery of the goods. It contends that the defendant was obliged to make delivery to one of its agents or representatives, and that until the goods were so delivered they continued in transit. Plaintiff concludes that since there was no agent or representative present to receive the reels for it until August 16, 1957, and since the goods were unloaded by Air Force personnel without its consent, that the damage to the reels actually occurred while the goods were in transit.
The difficulty with which plaintiff is confronted in this *298 connection is that the question of misdelivery on August 5, 1957 was not an issue at the trial. It was not raised in either the complaint or pretrial order. Plaintiff's theory for recovery was directed to damage occasioned during transportation en route to the destination, i.e., Barrington Air Force Base, or in the unloading on August 5, 1957.
Plaintiff's complaint reads, in part:
"3. The defendant received said merchandise under the above Pro number in good condition, and when said merchandise arrived at its destination, the merchandise had been damaged in transit." (Emphasis supplied.)
The pretrial order reads, in part:
"2. On July 15, 1957 pltf an electrical contractor hired the deft a common carrier engaged in interstate commerce licensed by ICC to deliver five reels of lead covered telephone cables to Barrington Air Force base at Barrington Nova Scotia in the same condition the reels were received by pltf alleges shipment was received by deft in good order but on reaching its destination the articles were damaged to extent of $1585.35.
3. Deft admits making the contract of shipment admits the receipt of the five reels in good condition; denies that the damage, if any occurred subsequent to its delivery of the five reels to Barrington Air Force base. More specifically denies they were in fact damaged while in transit. (Emphasis supplied.)

* * * * * * * *
7. Sole issue involved is whether or not the goods in question whether they were received in the same condition as they were when shipped or in accordance with the wording of the contract, i.e. bill of lading." (Emphasis supplied.)
No testimony was adduced on the question of misdelivery. The testimony adduced by both parties demonstrates that plaintiff sought to recover for damage in the transportation of the goods to "destination," i.e., the air base, or during the unloading on August 5, 1957.
At the close of plaintiff's case, its counsel moved to amend its complaint to read that "the goods were delivered on August 5." The application to amend was granted by the court, upon consent of defendant's counsel.
*299 It is plain that plaintiff conceived that the arrival of the goods and the unloading on August 5, 1957 were a compliance with the contract for transportation and that the trial proceeded upon this basis and not that no delivery took place until the arrival of its representatives at the air base on August 16, 1957.
The question of misdelivery is clearly an after-thought of plaintiff raised for the first time on this appeal. An examination of the testimony adduced on plaintiff's behalf demonstrates that it first conceived that the reels were damaged before arrival at Barrington Air Force Base. When, during trial, the proof failed to sustain this theory, plaintiff shifted its attack. The sole affirmative testimony adduced by plaintiff on the question of delivery was obtained from Michaud, its superintendent, who was called, as plaintiff's counsel stated, "to testify to all damage." At the very end of his direct examination, the following appears:
"Q. Did you at any time authorize anyone in Barrington Air Force Base to receive any shipments? A. No.
Mr. Harkavy: I object to the question.
The Court: There is one further point. I understand this man did not arrive there until some time after this thing took place, and I therefore do not see the bearing it has on it unless he was on the base and had charge before and had left some kind of instructions. You will have to develop it and not leave it up in the air.
Q. Were you on the base prior to the delivery of this shipment? A. Yes.
Q. And when was that? A. In June of 1957.
Q. And at that time did you leave instructions for anyone to receive any merchandise for you? A. No."
This testimony, read in the light of the pretrial order, the amended complaint, and plaintiff's cross-examination of defendant's witnesses shows that plaintiff attempted, during the trial, to infuse a new theory for recovery into the case  liability for unloading. The liability for unloading was based upon plaintiff's contention that defendant had a contractual obligation to unload upon the arrival at final destination and that this duty was discharged in a negligent *300 manner. The assertion of such an obligation is consistent only with the conclusion that the goods were no longer in transit upon arrival and their unloading at the air base, i.e., in the language selected by plaintiff in its amended complaint, when "the goods were delivered on August 5," and inconsistent with its present contention that the goods were in transit until some subsequent date when the goods came into the actual possession of a representative of plaintiff.
Plaintiff's theories for recovery, as I conceive them, were at the termination of the trial: (1) the goods were damaged before arrival at Barrington Air Force Base (its original theory as evidenced by the pretrial order), or (2) the defendant had a contractual obligation to unload upon arrival at Barrington Air Force Base and the goods were damaged on August 5, 1957 in that unloading, or, in the event that defendant had no such contractual obligation, it was defendant's duty to permit the unloading only by plaintiff's agents, and since the Air Force personnel did not fit into that category, the damage caused by their unloading is attributable to defendant (its theory as developed during the trial and as evidenced by its amended complaint).
In the light of the fact that the issue of misdelivery was not raised below, nor was the case tried upon that theory, this court should not consider it on appeal. Defendant aptly points out that had the issue of failure of delivery to the consignee on August 5, 1957 been raised below, it might well have offered proof of the agency of Air Force personnel to receive the goods. A point not urged below normally will not be permitted to be made on appeal except where a question of public policy or jurisdiction is involved. M.N. Axinn Co. v. Gibraltar Development, Inc., 45 N.J. Super. 523, 536 (App. Div. 1957). Clearly, no question of public policy or jurisdiction is here involved.
An examination of the record satisfies me that the issue of misdelivery was not "tried by consent or without the objection" of defendant. R.R. 4:15-2. As to the issue of the contractual obligation of unloading, I doubt that *301 defendant squarely recognized from the proofs mentioned that plaintiff was seeking recovery upon that basis. In the light of the confused state of the complaint and pretrial order and the confusing conduct of the trial by plaintiff's counsel, I would remand with permission to plaintiff to amend its complaint and pretrial order so as to encompass the issues I have secondly outlined above, and with permission to defendant to amend its pleadings as well. In addition, both parties should be accorded an opportunity for further pretrial discovery. Upon a retrial I would limit the issue to the question of defendant's obligation to unload and its acquiescence in unloading on August 5, 1957 by parties allegedly not plaintiff's agents or servants for that purpose. Barber v. Hohl, 40 N.J. Super. 526 (App. Div. 1956); Grammas v. Colasurdo, 48 N.J. Super. 543 (App. Div. 1958); Littlefield v. Kearns, 5 N.J. Super. 68 (App. Div. 1949); Binder v. Green, 8 N.J. Super. 88 (App. Div. 1950).
I would not permit plaintiff to try the general issue of misdelivery. It selected its theories before and at the trial and I would not now permit an extension thereof. Plaintiff has had "one bite of the apple" and although I consider it in the interest of substantial justice to proceed as I have suggested, I conceive that it would be a denial of justice to permit plaintiff now further to expand its case.