73 N.J. Super. 466 (1962)
180 A.2d 200
ALEXANDRIA PROSKURNJA AND ALEXANDER PROSKURNJA, PLAINTIFFS,
v.
ARTHUR ELDER, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 15, 1962.
*467 Mr. John Romanition argued the cause for plaintiffs.
Mr. Cornelius W. Caruso argued the cause for defendant.
*468 MATTHEWS, J.C.C. (temporarily assigned).
This matter comes before me on the application of plaintiffs, pursuant to N.J.S.A. 39:6-69, for payment by the Unsatisfied Judgment Fund of a judgment heretofore obtained by plaintiffs before this court and a jury. Counsel for the Fund opposes the application contending that the conduct of the defendant which caused the injury to plaintiffs amounted to an intentional harm (assault and battery with an automobile) and, therefore, the Fund is not liable for the payment of the resulting judgment.
To dispose properly of the application presently before the court, it is necessary to refer to the pretrial proceedings and the conduct of the trial of this action.
Plaintiff Alexandria Proskurnja, on September 1, 1958, was injured as the result of being struck by a motor vehicle operated by defendant Arthur Elder. On June 1, 1959 plaintiff and her husband, who sued per quod, instituted a civil action against Elder by filing a complaint with the clerk of this court. The complaint as filed alleged the happening of the accident, and further, that the injuries resulting therefrom to plaintiffs were caused proximately by the negligence of defendant. Defendant, being uninsured at the time of the happening of the accident (notice having been given to the Unsatisfied Judgment Fund by plaintiff) was represented in the action by counsel representing the Fund. Defendant filed an answer generally denying negligence and asserting the affirmative defenses of contributory negligence, assumption of risk, negligence of third parties, and failure of the plaintiffs to comply fully with the provisions of the Unsatisfied Claim and Judgment Fund Act. With regard to the last mentioned defense, it is not disputed that the only defense to payment of the judgment subsequently obtained by plaintiffs is that arising out of the alleged intentional nature of the harm inflicted on plaintiffs. There is no evidence that plaintiffs have failed in any other manner to comply with the provisions of the Unsatisfied Claim and Judgment Fund Act.
*469 Subsequent to issue being joined in the action, pretrial discovery was conducted by defendant in the form of oral depositions. During the taking of the depositions, statements were made by plaintiffs and a witness, produced on their behalf, to the effect that the actions of defendant in operating his motor vehicle constituted an intentional assault and battery by defendant upon plaintiff Alexandria.
The matter came on for pretrial before a judge of the Superior Court on October 10, 1960. Paragraph 1 of the pretrial order entered in this action reads as follows:
"Essentially this is an alleged assault and battery by use of an automobile although the complaint sounds in negligence only. The husband sues per quod."
Although no amendment had been made to the complaint, plaintiffs' contentions were set forth in the pretrial order in the following language:
"Plaintiff contends on Sept. 1, 1958 the defendant had his car parked on Littleton Ave., Newark, N.J., facing north on the easterly side of the street, and that the plaintiff wife was removing personal articles from the trunk of a parked automobile which automobile was parked directly in front of the defendant's vehicle. She contends that the automobile from which she was removing the articles was parked near 386 Littleton Av. While she was removing the articles the defendant asked her to step aside so that his vehicle could proceed forward. She asked the defendant to wait a moment, the defendant blew his horn, plaintiff wife told defendant to shut up, defendant then deliberately moved his car forward, squeezing plaintiff between the bumpers of the two vehicles and remained in that position until the driver of the forward vehicle moved his vehicle forward, thus releasing plaintiff wife who fell to the ground. Plaintiff husband sues per quod."
The contentions of defendant alleged that there was no contact between defendant and plaintiffs' vehicle and then reiterated the affirmative defenses which he had set forth in his answer.
Paragraph 6 of the pretrial order contains the following:
"Plaintiff applied tt [sic] pretrial to be permitted to amend complaint to allege willful, intentional injury which amendment the Court *470 denied because of defendant's objection. Plaintiff has leave to make a notice of motion within 20 days of this date for leave to amend. This Court expresses no opinion as to the merits of the motion."
Finally, in paragraph 7, the legal issues for determination at the trial were set forth as negligence, contributory negligence, assumption of risk, and the negligence of third persons. In addition, defendant reserved the right to contest plaintiffs' eligibility under the Unsatisfied Judgment Fund Act.
Despite the fact that leave was granted to plaintiffs to move to amend their complaint within 20 days of the date of the pretrial order for the purpose of asserting a willful, intentional injury on the part of defendant, no such proceeding was in fact taken by plaintiffs. Thus, when the case came before me for trial, the issue between the parties was one of negligence, based upon the allegations of the complaint and the statement of legal issues as expressed in the pretrial order, although the contentions of plaintiffs had, as set forth in that order, indicated an intentional harm. I pointed out this apparent discrepancy in the pretrial order to counsel for both parties prior to the impaneling of the jury. Plaintiffs' counsel stated that it was his intention to try the case on the theory of negligence and to abandon any contention relating to intentional harm.
After the jury had been impaneled and sworn, and plaintiff had opened, defendant moved for judgment on the opening, contending that plaintiff had in his opening undertaken to establish a case sounding in intentional tort, an issue not framed by the pleadings and the pretrial order. This motion of defendant was denied by me, since I was of the opinion that plaintiff had outlined a case to the jury sounding in negligence. At the time of ruling on the motion, I cautioned plaintiffs that the theory of the case as framed by the pretrial order and pleadings was one of negligence.
At the close of plaintiffs' case, defendant again moved for judgment on the ground asserted at the end of plaintiffs' *471 opening to the jury. I again denied defendant's motion, since I was satisfied that the proofs elicited on behalf of defendant presented an issue as to the negligence of defendant for determination by the jury. While it may be conceded that there was some indication through the testimony of one witness, if believed by the jury, that the defendant intentionally struck plaintiff Alexandria with his motor vehicle, I was satisfied that this alone did not raise an issue for determination by the jury not embraced in the pleadings and pretrial order.
The defense interposed on behalf of defendant denied contact of his motor vehicle with plaintiff Alexandria, and asserted contributory negligence on her part. At the close of the case and prior to summation defendant again moved for judgment on the ground heretofore asserted. The motion was once again denied by me. After summation, I submitted the case to the jury on the theory of negligence, and after deliberation, the jury returned to the courtroom and rendered the following statement of its verdict through their foreman:
"MR. FOREMAN: We find the defendant guilty of negligence, the plaintiff not guilty of contributory negligence. And do you want me to say the sum that we have come to?
MR. CLERK: What are your findings, Mr. Foreman?
MR. FOREMAN: We find the sum to be awarded to the husband $713.00 for medical expenses, and to Mrs. Proskurnja, $4500.00, total sum."
After efforts were made by plaintiffs to collect the judgment obtained against defendant, see N.J.S.A. 39:6-70(h-m), the present proceeding for payment was brought before me.
There can be no question but that the pretrial order is ordinarily controlling as to the contentions and issues available for submission at trial. Lertch v. McLean, 18 N.J. 68, 72 (1955); Jenkins v. Devine Foods, Inc., 3 N.J. 450 (1950); Fluoro Electric Corp. v. Smith Transport Ltd., 58 N.J. Super. 287 (App. Div. 1959). In *472 Jenkins v. Devine Foods, Inc., supra, it was stated that the purpose of the pretrial conference is to simplify the issues, amend the pleadings where necessary, and to avoid unnecessary proof of facts at trial. It was also stated in that opinion that a court should give no instruction to the jury which would nullify the effect of a pretrial order, or be inconsistent with the issues as framed in that order. Trial courts are enjoined that modification of the pretrial order may be had at the trial to prevent manifest injustice, but such modification is to be by direction and not by indirection.
There is no question but that in the present matter the pretrial order contained inconsistencies. The order was clear, however, in denying plaintiffs leave to amend their complaint to assert an intentional tort. While plaintiffs' contentions did espouse a theory of intentional harm, nevertheless, the issues as framed in the order for trial, and which were based upon the pleadings filed in the action, limited the issue between the parties to negligence. It was upon this theory that plaintiffs tried the action before the jury and me.
In Fluoro Electric Corp. v. Smith Transport Ltd., supra, trial courts were reminded that R.R. 4:15-2 permits issues not raised by the pleadings in pretrial order to be considered properly raised when such issues are tried by consent or without the objection of the parties. Before a judgment based on issues not raised by the pleadings or pretrial order may be sustained, the court must be satisfied that such issues were recognized by the parties and actually tried. See, e.g., Sattelberger v. Telep, 14 N.J. 353, 363 (1954); Barber v. Hohl, 40 N.J. Super. 526 (App. Div. 1956); Nazzaro v. Nazzaro, 57 N.J. Super. 393 (App. Div. 1959).
Unquestionably, there was no consent between the parties to this action that the issue of intentional harm was to be tried before the court and jury. Plaintiffs disavowed such a theory of recovery at the time of trial. I am satisfied *473 that the case was tried by plaintiffs on the theory of negligence and that the verdict returned by the jury was based upon the proofs adduced which established the negligence of defendant.
The Fund argues, however, that despite the fact the case proceeded on the theory of negligence, there was evidence to indicate that the injuries to plaintiff Alexandria were the direct result of intentional conduct on the part of defendant. Because of this the Fund asserts it is under no obligation to pay the judgment recovered by plaintiffs against the uninsured defendant; this because the Unsatisfied Claim and Judgment Fund Act does not permit recovery by a party who is injured through the wanton or intentional conduct of an uninsured motor vehicle owner or operator. The Fund can offer no authority in support of this contention except to suggest the analogy that such injury would not be covered under the terms of the usual motor vehicle liability insurance policy.
It seems to me that the suggested analogy between the ordinary automobile casualty insurance policy and the Unsatisfied Judgment Fund is not appropriate. We are, in this action, concerned only with the Fund, there being no question that the defendant was uninsured at the time of the accident.
The striking difference between a contract of insurance and the Unsatisfied Judgment Fund is the right of the Fund to seek recovery for amounts paid to one injured by an uninsured motorist from such motorist. In common practice, no such right exists in the insurer when it has paid sums on the behalf of its insured to one injured through the actions of the insured.
While recovery from both an insurer and the Fund is based upon the principle of fault, the objects for which each, i.e., the policy of insurance and the Fund, exists are not similar. The obvious reason for the existence of insurance is the protection of the insured. The stated reason for the existence of the Unsatisfied Claim and Judgment *474 Fund is to relieve the economic hardship imposed upon persons who sustain personal injuries or property damage, or both, caused by financially irresponsible and uninsured motorists, where the claimants have no other source of compensation. Dixon v. Gassert, 26 N.J. 1 (1958). The overall purpose for the creation of the Motor Vehicle Security-Responsibility Law (L. 1952, c. 173) and the Unsatisfied Claim and Judgment Fund Law (L. 1952, c. 174) is to induce the owners and operators of motor vehicles to procure liability insurance and, therefore, mitigate the evil sought to be corrected by those laws  the helplessness of persons injured by financially irresponsible motorists in the maintenance and use of their motor vehicles.
These concepts have been expressed by Scott H. Elder in his article, "The Unsatisfied Judgment Fund and the Irresponsible Motorist," Current Trends in State Legislation, 1953-1954, University of Michigan 1954, pp. 47, 156:
"The Unsatisfied Judgment Fund.  Significantly, the unsatisfied judgment fund preserves the principle of fault. Indeed it not only preserves but emphasizes fault, for now, through subrogation, the state becomes an active participant in the competition for the debtor's assets and imposes strenuous sanctions to induce him to meet his obligations. For years many have believed in the existence of a growing trend in our law toward liability without fault. In a sense the fund continues this trend if one thinks of the fund as only a distribution device. But on the other hand, the fact that the fund does not seek to absolve the debtor but only to relieve the victim indicates that, in its final aspects, the fund reverses this trend by waiting out the debtor. * * *"
In dealing with the prerequisites to collection from the Fund, the Legislature has provided under N.J.S.A. 39:6-65 that "Any qualified person * * * who suffers damages resulting from bodily injury * * * arising out of the ownership, maintenance or use of a motor vehicle in this State * * * shall, within 90 days after the accident * * * apply for payment from the fund * * *." The omitted conditions of this section dealing with the notice provisions are inapplicable to the present *475 action. There is no dispute here as to whether plaintiffs are qualified persons within the meaning of the definition of that term as set forth in N.J.S.A. 39:6-62.
Under N.J.S.A. 39:6-70, which deals with the hearing on application for payment of judgment, 13 conditions have been set forth before a judgment directing payment may be entered by the court. None of the conditions expressed in this section relate in any manner to the nature of the conduct on the part of the uninsured owner or operator. Significantly, subsection (f) which refers to insurance states: "The judgment debtor at the time of the accident was not insured under a policy of automobile liability insurance under the terms of which the insurer is liable to pay in whole or in part the amount of the judgment." (Emphasis added).
In Wormack v. Howard, 33 N.J. 139, 142 (1960), the Supreme Court, in dealing with the problem of construction of this section (39:6-70) of the Fund Act, stated:
"In Giles v. Gassert, 23 N.J. 22, 34 (1956), we noted that `The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy.' But while liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature for as was said in Dixon v. Gassert, 26 N.J. 1, 9 (1958) `It is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body in order to properly effectuate the legislative design.' And, at page 8: `There is no absolute indemnity provided for. * * * the statute does not reflect an intention to make every claimant completely whole * * *.' Rather it provides some measure of relief to those persons who come within the class intended to be protected. Corrigan v. Gassert, 27 N.J. 227, 233 (1958). But before coverage can be extended to any applicant, he must clearly demonstrate that he is a member of the class for whose benefit the Fund was established."
It is my conclusion that plaintiffs here have demonstrated clearly that they are within the class for whose benefit the Fund was established within the meaning of *476 the provisions of the act. The injuries sustained by plaintiff Alexandria arose out of the ownership and use of a motor vehicle by the uninsured defendant without fault on her part. N.J.S.A. 39:6-62. The damages incurred by her husband flowed consequently therefrom. Certainly, to read into the act an exclusion from recovery based upon the nature of the conduct of the uninsured operator would do violence to clear legislative expression. Plaintiffs having met all other requirements under the act, and the defendant being found financially irresponsible under section 39:6-70 of the act, there is no reason to bar their recovery from the Fund.
In view of the foregoing considerations of the plaintiffs having satisfied me within the meaning of N.J.S.A. 39:6-71 that they have satisfied the provisions of N.J.S.A. 39:6-70, I will sign an order directed to the Treasurer requiring him to make payment from the Fund in the amount of judgment entered in the within action on February 7, 1961.
An order may be submitted on notice or on consent.