MARY R. OBST, PLAINTIFF, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *ET ALS.*, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided March 1, 1973.

Mr. *Lawrence P. Urban* for plaintiff Mary R. Obst
(Messrs. *Shusted and Urban,* attorneys).

Mr. *Edgar E. Moss, II* for defendant State Farm Mutual
Automobile Insurance Company (Messrs. *Moss and Powell,*
attorneys).

Mr. *Michael D. Capizola* for defendant Raymond Marini
(*Shapiro, Brotman, Eisenslat and Capizola*).

BISCHOFF, J. S. C. This declaratory judgment action
seeks the interpretation of an uninsured motorist endorse-
ment to a certain policy of automobile liability insurance.

The facts are as follows.

On February 21, 1970 plaintiff Mary Obst was a pas-
senger in a motor vehicle owned and operated by her hus-
band Charles Obst. They were returning home in the early
morning hours from a visit to friends. Mary Obst worked
night work, was tired and had dozed off. She was seated in
the front seat and was suddenly awakened when she was
thrown forward to the floor of the car. She had no knowledge
concerning the reason for or the facts causing this incident
to occur.

Her husband, who was the driver, provided the only tes-
timony concerning the happening of the incident. He tes-
tified he was proceeding on Black Horse Pike within the
speed limit and saw in his rear view mirror the lights of a
car approaching rapidly. The operator of this car overtook
and passed him, cut in front of Obst sharply and applied his
brakes. When Obst saw the brake lights go on, he applied
his brakes, skidded and turned to the left, bringing his car to
an abrupt halt. There was no contact between the two
vehicles. The other vehicle continued on its path and was

never identified. It left the scene. As a result of the sudden application of brakes, plaintiff Mary Obst was thrown forward into the dashboard.

She sustained no outward signs of injury. The next day her eye was swollen shut, and when the swelling went down in a few days it was observed that she had no vision in the eye. Medical attention was sought for the injury for the first time on February 24, 1970. A series of hospitalizations followed, with the end result being the loss of the eye.

Charles Obst testified that since there was no contact with the other car and no immediate signs of injury, no report of the incident was ever made to the police. There were no witnesses to the incident.

The incident was reported to defendant State Farm Mutual Automobile Insurance Company by plaintiff at the suggestion of her treating physicians on February 24, 1970.

Plaintiff's policy of insurance was issued by defendant on May 2, 1968 and was effective until October 10, 1968. It was maintained in effect thereafter by payment of semi-annual premiums and was in effect on the date the accident occurred. The policy carries limits of $20,000-$40,000 and contains coverage for bodily injury, property damage and collision insurance. The policy also contained, as insuring agreement III, uninsured automobile coverage.

The exact terms of the endorsement attached to the policy are unimportant, for it is agreed by all parties that the provisions of this uninsured motorist coverage, in effect at the time the accident occurred, was the form of the endorsement promulgated and approved by the Commissioner of Insurance on April 2, 1969.

Plaintiff made claim against defendant State Farm under the uninsured motorist endorsement. State Farm has denied liability, contending there is no coverage.

Plaintiff has also given timely notice of the accident to the Unsatisfied Claim and Judgment Fund Board (hereinafter board), and that Board has also denied liability to plaintiff on the ground that the policy of State Farm pro-

vides coverage for the claim. Plaintiff, therefore, seeks a declaration of her rights either against State Farm under the policy in question or the Board, or either of them.

The pertinent portions of the uninsured motorist endorsement are as follows:

The company will pay all sums which the insured * * * shall be legally entitled to recover * * * caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle * * *

A "hit-and-run vehicle" is defined to mean (i) a highway vehicle which causes an accident resulting in bodily injury to an insured arising out of physical contact of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident, or (ii) a highway vehicle which without physical contact with the insured or with a vehicle which the insured is occupying at the time of the accident causes bodily injury to an insured arising out of an accident in New Jersey, provided:

(a) there cannot be ascertained the identity of either the operator or owner of such highway vehicle; and

(b) the insured or someone on his behalf shall have reported the accident within 48 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and

(c) at the company's request, the insured or his legal representative makes available for inspection the vehicle which the insured was occupying at the time of the accident; and

(d) with respect to subdivision (ii) the facts of such accident can be corroborated by competent evidence other than the testimony of any person having a claim under this or any other similar insurance as the result of such accident.

I find from the testimony and evidence presented that subsection (b), requiring a report to the police within 48 hours, and subsection (d), requiring corroboration, have not been complied with. It is on that basis that defendant State Farm has denied liability.

In answer to that contention defendant Board contends that the uninsured motorist endorsement is to be interpreted as broadly as the protection provided by the Fund law and

accordingly contends subsection (b) and (d), above quoted, are inapplicable and State Farm is liable.

This contention of the Fund is based upon the following facts.

The testimony of Salvatore Capozzi was presented in support of the Fund's position. He is the manager of the Board and has been manager since 1965. He was assistant manager from 1959 to 1965. The issuance of the uninsured motorist endorsement by insurance carriers was authorized by enactment of *L.* 1968, *c.* 385, now found in *N. J. S. A.* 17:28-1 *et seq.*

Capozzi gave his understanding of the legislative history of this act as going back to the early 1960s, at which time the Fund found itself in difficulty with a growing number of claims being presented against the Fund and a limitation of income.

Capozzi's testimony concerning his understanding of the legislative history of the act is in accord with the case of *Hannan v. Employers Commercial Union Ins. Co.,* 117 *N. J. Super.* 485 (Law Div. 1971), wherein it was stated:

> The circumstances leading up to the enactment of the two statutes in question (*N. J. S. A.* 18:28-1.1 and 1.2) is that the Unsatisfied Claim and Judgment Fund was bearing the burden of providing protection to those who were injured by uninsured motorists. According to *Exum v. Marrow*, 112 *N. J. Super.* 570, 574 (Law Div. 1970), the evil remedied by the statutory change was the "financial burden relating to claims against uninsured motorists" that was being borne by the Fund.
>
> The court in the above case explained that the plain intendment of the amendment to *N. J. S. A.* 17:28-1 was to relieve the Fund of some of these financial burdens. [at 489]

At that time the Legislature held hearings on the problem and resolved thereafter to eliminate certain classes of claims against the Fund. There were hearings on various proposals in the Spring of 1968. The hearings brought about certain amendments to the Fund law (*N. J. S. A.* 39:6-62) and Insurance Law (*N. J. S. A.* 17:28-1, 1.1, 1.2, *L.* 1968,

*c.* 385). The law as thus enacted was approved January 2, 1969, effective 90 days thereafter.

Meetings were thereafter held by the Commissioner of Insurance to establish the exact wording of the uninsured motorist coverage endorsement to be approved. Testimony of Capozzi concerning events that transpired at these meetings before the Commissioner was offered by the Fund as being material and relevant to the construction to be given to the endorsement. Over objection this testimony was received and discloses the following facts.

The first meeting that Capozzi attended was on March 24, 1969. The Commissioner of Insurance was present as were many others, including Dan Collins, who was identified as counsel for the Mutual Insurance Rating Bureau which is an association to which State Farm belongs as a member. The meeting was called to discuss the terms of the uninsured motorist endorsement to be effective April 2. No decision was made at that meeting on either the rate to be charged or the form to be used. A subsequent meeting was held on April 1. Dan Collins was again present, and the Commissioner opened the meeting by stating that only one type of endorsement would be approved. The carriers had submitted a proposal to the Commissioner which did not provide coverage as broad as that provided by the Board. The Board objected to this proposed form.

The rate suggested by the carriers to be charged for the form they proposed was $3 and based on the New York experience. Capozzi testified there were basic differences in the form proposed by the carriers and the Board.

First, the definition of the covered vehicle differed. One covered "highway vehicle," the other covered "motor vehicle."

Second, reporting time under the Fund law was 90 days and under the proposed form submitted by the carriers reporting to the police within 48 hours was required as was notice to the carrier.

Third, corroboration was required in hit-run cases under the endorsement and not under the Fund law.

He stated there were other differences.

The Commissioner announced to those then present on April 1 that he would accept the form of endorsement submitted by the carriers because of the time problem then involved and grant a $5 rate for the endorsement.

Capozzi further testified that the Commissioner announced that in exchange for the increase in rate to be allowed there was an accord that the endorsement would be interpreted as broadly as Fund law and would be subsequently rewritten.

Capozzi testified that he was satisfied all present understood and were in accord with the Commissioner's statement.

It is undisputed that the form of the endorsement effective April 2, 1969 has never been changed.

There was a narrow issue thus presented, that is, what effect does this accord reached in the Commissioner's office on April 1, 1969 have on the interpretation of the uninsured motorist endorsement?

There are many basic differences in the creation of the Fund on the one hand and the uninsured motorist endorsement on the other. The basic theories underlying both the Unsatisfied Claim and Judgment Fund and the policy endorsements are the same, but the schemes of compensation to an injured party are different. *Exum v. Marrow*, 112 *N. J. Super.* 570, 574–575 (Law Div. 1970). That being so, it is impossible for this court to give effect to a statement that the interpretation of the endorsement should be as broad as the Fund law. Some basic differences between the two are as follows:

1. The uninsured motorist endorsement is optional. 17:28–1.2.

The coverage provided by the Fund is effective without consent.

2. The definition of hit-and-run in the Fund law (*N. J. S. A.* 39:6–78) and in the endorsement are different and are vastly dissimilar.

3. The Fund retains the right to trial by jury (*N. J. S. A.* 39:6–67). No corresponding right is given to the carrier when claim is made under the uninsured motorist endorsement.

4. The Fund has been given the power to compel cooperation of the insured (*N. J. S. A.* 39:6–68). No corresponding right is given the carrier under the uninsured motorist endorsement.

5. The Fund has full discovery available to it. (*N. J. S.* 39:6–67, 68). No corresponding right is given to the carrier under the uninsured motorist endorsement.

6. The Fund does not distinguish between intentional and nonintentional torts. *Proskurnja v. Elder*, 73 *N. J. Super.* 466 (Law Div. 1962). See, also, the case of *Lascari v. Iannaci*, 56 *N. J.* 317 (1970). This distinction is made under the uninsured motorist endorsement.

7. The Fund has the right of direct recovery or reimbursement from the uninsured. (*N. J. S. A.* 39:6–77). Under the uninsured motorist endorsement, the carrier has the right of recovery but by way of subrogation.

8. There are exclusions with respect to the right to recover under *N. J. S. A.* 39:6–70 which are not applicable to those making claim under the uninsured motorist endorsement.

9. The procedural nature of *N. J. S. A.* 39:6–70 is a shield not available to the carrier under the uninsured motorist endorsement.

10. The notice provisions of *N. J. S. A.* 39:6–65 do not apply to the carrier under the uninsured motorist endorsement.

11. Prior to any recovery from the Fund, the claimant must demonstrate that he has exhausted all remedies against the uninsured driver. *N. J. S. A.* 39:6–71. This does not apply to a claim made under the uninsured motorist endorsement.

These noted differences suffice to indicate the impossibility of attempting to interpret the language of the un-

insured motorist endorsement as broadly as the Fund law. Any attempt to do so would require the court to rewrite the endorsement. This is the responsibility vested by the Legislature in the Commissioner of Insurance.

This court accordingly concludes that the evidence of the alleged accord reached in the office of the Commissioner of Insurance on April 1, 1969 is of no aid or assistance in interpreting the uninsured motorist endorsement. This conclusion is fortified by the lapse of a period of four years without any change being made in the uninsured motorist endorsement as it was written and approved on April 2, 1969.

This court concludes that the uninsured motorist endorsement clearly requires, under the circumstances of this case, corroboration and reporting to police. It is undisputed that neither requirement has been met, and accordingly plaintiff has no right to recover on the uninsured motorist endorsement against State Farm.

Plaintiff is left to pursue her rights against the Board.