**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0131-16T4

TREVOR SHEPPARD,

    Plaintiff-Appellant,

v.

FRANK J. LENTZ, ESQUIRE,
and THE LAW OFFICES OF
FRANK J. LENTZ, LLC,

    Defendants,

and

PERSKIE, WALLACH, FENDT &
HOLTZ, PC, (n/k/a
PERSKIE & FENDT, PC),
and M. DANIEL PERSKIE,
ESQUIRE,

    Defendants-Respondents.

_____

        Argued May 31, 2018 — Submitted June 26, 2018

        Before Judges Alvarez and Geiger.

        On appeal from Superior Court of New Jersey,
        Law Division, Atlantic and Cape May Counties,
        Docket No. L-2083-13.

        Thomas B. Duffy argued the cause for
        appellant.

Matthew S. Marrone argued the cause for respondents (Goldberg Segalla, LLP, attorneys; Matthew S. Marrone, on the brief).

PER CURIAM

Plaintiff Trevor Sheppard appeals from a July 27, 2016 order granting defendants Perskie, Wallach, Fendt & Holtz, PC and M. Daniel Perskie (collectively, the Perskie defendants) summary judgment and denying plaintiff's cross-motion for leave to file an amended complaint. We affirm.

We glean the following facts from the record. On August 4, 2003, plaintiff and his friends, Kevin Farrell and Scott Knoedler, were occupants of a vehicle involved in a collision with another vehicle. Plaintiff was a passenger; it was unclear who was driving. Plaintiff suffered serious facial and dental injuries.

Plaintiff, Farrell, and Knoedler retained the Perskie defendants to represent them in their personal injury claims arising out of the accident. On August 12, 2003, plaintiff entered into a standard-form contingency fee agreement with the Perskie defendants regarding his personal injury claim.

Perskie, the attorney handling the matter, subsequently determined he had a conflict of interest in representing plaintiff and the other two claimants due to a dispute over who was driving the vehicle they occupied on the night of the accident. As a result, Perskie referred plaintiff to defendant Frank J. Lentz,

an attorney in a separate law firm with offices in a different suite in the same building as Perkie's office, to represent plaintiff on the personal injury claim. Lentz then commenced a personal injury lawsuit on behalf of plaintiff. Farrell and Knoedler retained other counsel. Perskie continued to represent plaintiff on his personal injury protection benefit (PIP) claim for medical expenses against his own automobile insurer.[1]

At all relevant times, Lentz was licensed to practice law in New Jersey. The license was in good standing. He had never been the subject of any prior disciplinary charges or sanctions. There is no evidence he was under criminal investigation or had previously committed legal malpractice.

The Perskie defendants did not seek or obtain a referral fee from Lentz. They did not enter into a fee-sharing agreement with Lentz. They did not seek, expect, or receive compensation from Lentz for the services they rendered on the personal injury claim before it was referred to Lentz. Attorneys in their office performed no further legal services on the personal injury file after it was referred to Lentz.

---

[1] The Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -20, requires insurers of private passenger vehicles to provide enumerated PIP benefits, including medical expense benefits, to occupants of automobiles injured in a motor vehicle accident without regard to fault. N.J.S.A. 39:6A-4.

A-0131-16T4

Plaintiff contends this transfer occurred after Perskie introduced plaintiff to Lentz following a "walk down the hallway." Plaintiff argues neither attorney informed him of whether there was joint representation or a referral fee. He claims Perskie's staff continued to work on plaintiff's case after his referral to Lentz. As evidence, plaintiff claims members of Perskie's law firm arranged for service of Sheppard's complaint against Farrell and continued to represent plaintiff in his PIP action against his insurer.

Lentz retained Frank Larkins to serve Farrell, whom plaintiff claims is the investigator for the Perskie firm. The Perskie defendants contend the PIP action remained wholly separate from the personal injury action filed against third parties.

Plaintiff contends Lentz mishandled the personal injury action by failing to name two potentially liable parties as defendants and by failing to assert a claim for negligent entrustment against Farrell. Specifically, the complaint did not name Knoedler as the negligent driver of the vehicle in which plaintiff was riding or the Borgata Hotel Casino & Spa (Borgata) under a dram shop theory of liability.[2] The three actions brought

_____

[2]  Although Lentz eventually filed an amended complaint asserting a dram shop claim against the Borgata on behalf of plaintiff, Lentz filed it after the two-year statute of limitations had expired.

by plaintiff, Farrell, and Knoedler were consolidated and proceeded to trial.

In our prior opinion, <u>Farrell v. Knoedler</u>, we summarized the evidence produced at trial:

> On August 3, 2003, at approximately 11:30 p.m., Trevor Sheppard, Farrell, and Knoedler left their home in Farrell's truck. Knoedler was the driver. They went to a bar, where they stayed and were drinking until closing at 2:00 a.m. Knoedler drove the men back to their house. During the ride, Sheppard sat on the passenger side because he is deaf in his right ear. Farrell sat in the middle of the truck's bench seat.
>
> At the house, the men continued to drink. After about an hour, Knoedler drove the men to the Borgata in Atlantic City. He drove because he was the "most sober." Again, Farrell sat in the middle and Sheppard sat on the right.
>
> At approximately 4 or 5 a.m., after drinking additional alcoholic beverages, they left the Borgata. They do not remember whether Farrell or Knoedler was driving.
>
> Their truck ran a red light and collided with another vehicle. The driver-side airbag deployed. Farrell was ejected from the truck and was pinned under the passenger side front tire.
>
> [No. A-5451-06 (App. Div. June 10, 2008) (slip op. at 2-3).]

The jury found Knoedler was the driver. Because Lentz did not name Knoedler or the Borgata as defendants, and did not plead a negligent entrustment claim against Farrell, plaintiff did not

A-0131-16T4

recover any damages for his injuries, despite having stipulated damages of $150,000. Lentz did not appeal the verdict on behalf of plaintiff or file a respondent's brief in the appeal filed by Farrell.

On April 27, 2013, plaintiff filed this action against Lentz, his law firm, and the Perskie defendants, alleging they committed legal malpractice. Plaintiff settled his claims against Lentz and his law firm. As to the Perskie defendants, plaintiff alleged they negligently referred him to Lentz and failed to follow-up after the referral to ensure Lentz was "conforming to the standard of care and professional practice in the profession." The complaint alleged, in part:

> 3. Such a referral is legal guidance for which the referrer remains liable for its own malpractice in making the referral or for the malpractice of the firm to whom it refers the case, or both. In the alternative, it is asserted that the referring attorney is strictly liable for the malpractice of the attorney to whom the case is referred.
>
> 4. Mr. Perskie knew or should have known that Mr. Lentz was mainly a criminal attorney, having been a former police officer, and that he was unqualified in personal injury litigation. As a result, it was legal malpractice to refer Sheppard's case to Mr. Lentz. In any case, the referral was made and Lentz initiated an attorney-client relationship with Sheppard. However, it was very unclear to Sheppard whether he had actually been transferred to a new law firm as Mr. Lentz seemed to [be] treated as an

associate in the Perskie Firm, sharing offices, assistants and machinery.

Plaintiff also alleged the Perskie defendants were strictly liable for Lentz's errors because Lentz was their agent or partner or operating under some other legal status.

Perskie and Lentz practiced in different law firms located in separate office suites in the same building. Although Perskie retained the PIP claim, his involvement in the personal injury action ended upon referral of that claim to Lentz. Perskie did not draft, sign, or file any pleadings in the personal injury case. He did not attend any conferences between plaintiff and Lentz after the referral. Nor did he attend any depositions or court appearances in the personal injury action.

Notably, the complaint states "Lentz had an easy job to do" and that "discovery in the [personal injury] action seems to have proceeded with few incidents."

Plaintiff filed the malpractice action in Atlantic County However, the complaint stated venue "may have to be changed because a member of the Atlantic County Bench may be called as a witness to the malpractice and its damages (as well as other reasons)." Plaintiff's counsel claims "[v]arious retaliatory events happened" in other unrelated cases while this case was pending "which made [him] more insistent on a transfer." He states he complained to

the assignment judge and the case was moved from Atlantic County to Cape May County but argues the case should have been moved to another vicinage. Thereafter, counsel moved before the sitting judge and claimed no action was taken regarding venue change. Counsel contacted the assignment judge again and was advised the disqualification transfer issue had been referred to the Administrative Office of the Courts. He claims he has not received a decision on the issue.

The Perskie defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e). On April 9, 2014, the trial court issued a memorandum of decision denying the motion as premature based on the lack of discovery. The court also noted:

> This is not a motion for summary judgment. It is a motion for dismissal for failure to state a cause of action. With so little law, it cannot be determined at this stage of the pleadings whether a claim for negligence against Perskie could stand. . . .
>
> This is not a claim that can be dismissed at this point in time. The court cannot find that there is no cause of action against defendant Perskie based solely on the pleadings. After discovery is completed and the facts and circumstances are known, then a motion for summary judgment can be filed.

Pursuant to the order, the parties engaged in extensive discovery. After the completion of discovery, the Perskie

defendants moved for summary judgment. Plaintiff opposed the motion and cross-moved for leave to file an amended complaint, which would have added counts for breach of contract, per se liability, res ipsa loquitor, and spoliation of evidence. The Perskie defendants argued negligent referral is not recognized as a cause of action in New Jersey and plaintiff failed to establish any facts during the course of discovery that would support a claim for liability.

On July 27, 2016, the trial court issued an order and fifteen-page memorandum of decision granting summary judgment to the Perskie defendants and denying plaintiff's cross-motion for leave to file an amended complaint. After noting there is a dearth of case law addressing negligent referral as a cause of action in New Jersey, the judge found the facts in <u>Tormo v. Yormark</u>, 398 F. Supp. 1159 (D.N.J. 1975) to be distinguishable.

The judge found Perskie had no communications with plaintiff regarding the personal injury claim after he was introduced to Lentz. He noted plaintiff testified, as of March 9, 2005, when the complaint was filed, plaintiff knew Lentz, not Perskie, was representing him in the lawsuit and had filed the complaint of his behalf. The judge found "no evidence in the record to support a finding" that defendants "knew or had reason to know that Mr. Lentz would be negligent or guilty of an offense."

The trial court also found the new claims raised by plaintiff in the proposed amended complaint to be moot in light of the summary judgment granted to the Perskie defendants. This appeal followed.

On appeal, plaintiff argues (1) the court erred in hearing the case in Vicinage I based on appearances of impropriety, (2) the Perskie defendants were jointly and severally liable with Lentz for legal malpractice, (3) the court erred in allowing parole evidence to defeat the default condition of joint and several liability, (4) New Jersey's facts and circumstances test decisively determines defendants' liability, and (5) the court should impose strict liability for not informing clients of liens or fee splitting agreements.

A court should grant summary judgment "forthwith" when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Under this standard, "a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995) (quoting R. 4:46-2(c)).

10

The trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 540; see also R. 4:46-2(c). To grant the motion, the court must find that the evidence in the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Our review of an order granting summary judgment is de novo. See, e.g., Van Horn v. Harmony Sand & Gravel, Inc., 442 N.J. Super. 333, 340 (App. Div. 2015). We must observe the same standards as the trial court, including the obligation to view the record in a light most favorable to the non-moving parties. See IE Test, LLC v. Carroll, 226 N.J. 166, 184 (2016) (quoting Brill, 142 N.J. at 540). We accord no "special deference" to a trial court's legal determinations. Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995).

Applying those principles, we affirm the dismissal of plaintiff's complaint and the denial of his motion for leave to amend the complaint. The undisputed facts demonstrate the Perskie defendants are entitled to judgment as a matter of law.

Relying primarily on Tormo, a federal district court opinion, plaintiff argues New Jersey recognizes a cause of action for the negligent transfer or referral of cases and employs a facts and circumstances test to determine liability. However, we are aware of no New Jersey case law recognizing a cause of action for negligent referral. Moreover, plaintiff's reliance on Tormo is misplaced; the operative facts in Tormo are readily distinguishable.[3]

In Tormo, the court denied a summary judgment motion involving "a New York attorney's liability for negligence in transferring his clients' personal injury case to a criminally indicted New Jersey lawyer who subsequently embezzled the client's funds." 398 F. Supp. at 1164. The judge found the facts surrounding the New York attorney's role to be "confused and conflicting." Id. at 1165.

In 1968, the New Jersey attorney unethically solicited the transfer of the claim by calling the New York attorney and telling him he was "familiar with the accident" and was a "negligence specialist." Id. at 1166. Since New York was no longer a proper

---

[3] We also note the interpretation of New Jersey law by a federal district court is not binding upon us. See Kavky v. Herbalife Int'l of Am., 359 N.J. Super. 497, 501 (App. Div. 2003); Shaw v. City of Jersey City, 346 N.J. Super. 219, 229 (App. Div.), rev'd on other grounds, 174 N.J. 567 (2002).

venue for the action, and since the New York attorney was not licensed to practice outside New York, he later contacted the New Jersey attorney, requesting he bring suit in New Jersey. Ibid. The New York attorney allegedly told his clients the New Jersey attorney was a "good well-qualified lawyer" who "was going to handle the case." Id. at 1166-67. The New York attorney's "only independent inquiry into [the New Jersey attorney's] reputation consisted of ascertaining that he was listed as a licensed New Jersey attorney in a lawyer's directory." Id. at 1167. The New York attorney "never consulted [the New Jersey attorney] concerning resolution of the case after the transfer." Ibid. The New Jersey attorney took over the file, settled the claim, and converted the settlement proceeds. Id. at 1167-68.

Meanwhile, the New Jersey attorney was indicted in 1969 for conspiring to fraudulently obtain money from an insurance company. Id. at 1166 (citing State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971)). "He was subsequently convicted in January 1971, sentenced the following month to two consecutive 18-month prison terms, and disbarred in February 1972." Id. at 1166-67. The crimes "received coverage in the New Jersey press, but [the New York attorney] never discovered them until after [the New Jersey attorney] had fully executed his scheme." Id. at 1167.

The plaintiffs brought suit against the New Jersey attorney and two banks for conversion. Plaintiffs alleged one of the banks failed to take reasonable measures to discover whether the endorsement on the settlement draft was genuine. The banks brought third-party claims against the New York attorney for negligently selecting and failing to supervise the New Jersey attorney. The banks also asserted he "failed to diligently file suit even after [the New Jersey attorney's] fraud was discovered." Id. at 1165 n.3.

The New York attorney moved for summary judgment on both substantive and procedural grounds. The District Court emphasized the New York attorney's knowledge of New Jersey attorney's unethical conduct before the case was transferred to him, stating:

> But even if as a matter of law [the New York attorney] was not required to know of [the New Jersey attorney's] indictment, that conclusion does not resolve entirely the question whether a jury might find him negligent in retaining the New Jersey lawyer. [The New York attorney's] testimony shows that [the New Jersey attorney] informed him that he had obtained his name through [plaintiff]. But that testimony raises a question whether [plaintiff] consulted [the New Jersey attorney] or his "representatives," or whether the opposite was true. As an attorney, [the New York attorney] was required to realize that the latter situation would constitute a breach of the Code of Professional Responsibility. The offense of soliciting legal employment from laymen constitutes a ground for disbarment. It evidences a

14

> lawyer's unworthiness of the trust and confidence essential to the attorney-client relationship. An attorney who knowingly entrusted his client's business to a lawyer who he had reason to believe was guilty of that offense would be clearly negligent either in making the referral at all, or in doing so without advising his client of his suspicions.
>
> [Id. at 1171 (citations omitted).]

The District Court denied summary judgment, finding "[t]he record is laced with conflicting testimony concerning what, if any, supervisory responsibilities [the New York attorney] assumed by virtue of his express representations to [plaintiff] concerning the progress of the case." Id. at 1173. The court concluded "[s]ufficient evidence exist[ed] to justify submitting the question of factual causation to the jury, for it cannot be assumed that, had [plaintiff] been advised of the gravity of [the New Jersey attorney's] conduct, he would have ratified [the New York attorney's] decision to retain him." Id. at 1172.

Here, there is no allegation or evidence Lentz engaged in any unethical behavior before or during the referral of the file. Nor is there any allegation or evidence he engaged in criminal conduct before, during, or after the referral. Lentz's license to practice law in New Jersey was in good standing. He had never incurred disciplinary charges or sanctions. He was not under criminal investigation. Lentz represented to Perskie he was able to handle

15

the file. There is no evidence he had previously committed legal malpractice. Thus, the trial court properly concluded "there is no evidence in the record to support a finding that the [d]efendants knew or had reason to know that Mr. Lentz would be negligent or guilty of an offense."

The Perskie defendants did not seek or obtain a referral fee or enter into a fee-sharing agreement with Lentz. They did not seek, expect, or receive compensation from Lentz for the services they rendered on the personal injury claim before it was referred. Attorneys in their office performed no further legal services on the personal injury file after it was referred to Lentz.

Additionally, the personal injury claim was referred to Lentz because the Perskie defendants could no longer represent plaintiff due to a conflict of interest. Therefore, unlike the New York attorney in Tormo, the Perskie defendants were not permitted to undertake any supervision of Lentz to determine if all potentially liable parties and viable causes of action were pursued by Lentz in a timely fashion. See In re Advisory Comm. on Prof'l Ethics Op. No. 613, 121 N.J.L.J. 1037 (May 19, 1988) (stating "the conflict precluded the forwarding attorney from participating for either party"); In re Advisory Comm. on Prof'l Ethics Op. No. 301, 101 N.J.L.J. 209 (Mar. 9, 1978) (explaining lawyers should avoid representing multiples clients where his or her independent

judgment may become divided, and if a conflict develops, should withdraw from the matter entirely); <u>In re Advisory Comm. on Prof'l Ethics Op. No. 188</u>, 93 N.J.L.J. 789 (Nov. 12, 1970) (stating "[s]hould conflict develop, the attorney who undertakes to act for several plaintiffs must retire from all representations"); RPC 1.7(a); RPC 1.16(a)(1).

The Perskie defendants continued to represent plaintiff on his PIP claim against his insurer for medical expenses related to the accident. In doing so, they may have shared discovery of medical bills and records with Lentz. However, PIP claims are brought against the insurer and are not based on fault for the happening of the accident.[4] N.J.S.A. 39:6A-4. Plaintiff's medical bills and records were not directly relevant to whether additional parties should have been named defendants or additional theories of liability should have been asserted. Moreover, plaintiff's damages were stipulated in the personal injury action.

---

[4]  Medical expense benefits are triggered by notice of the loss and are overdue if not paid by the insurer within sixty days. N.J.S.A. 39:6A-5(g). If not paid in a timely fashion, the injured claimant may seek relief against the delinquent insurer through binding arbitration or civil litigation. <u>Riverside Chiropractic Grp. v. Mercury Ins. Co.</u>, 404 N.J. Super. 228, 235 (App. Div. 2008) (citing Cynthia Craig & Daniel Pomeroy, <u>N.J. Auto Ins. Law</u> § 10:1 at 187 (2008)).

In this case, we decline to recognize a new cause of action for negligent referral. Even if we were inclined to do so, the undisputed facts do not support a claim of negligent referral.

Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). In particular, we find no evidence to support plaintiff's claim that the motion judge was disqualified from hearing this case.

We affirm the grant of summary judgment to the Perskie defendants and the denial of plaintiff's motion for leave to file an amended complaint. Plaintiff's remedy for the alleged legal malpractice was against Lentz and his law firm. Plaintiff pursued his malpractice claim against Lentz and his law firm. If successful at trial, he would have recovered his actual and consequential damages, including the reasonable legal expenses and attorney fees incurred in prosecuting the legal malpractice action. See Saffer v. Willoughby, 143 N.J. 256, 272 (1996). Plaintiff elected to settle his claims against Lentz and his law firm before trial. There is no factual or legal basis for additional recovery against the Perskie defendants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0131-16T4